**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **REALPAGE, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:19-cv-01350-B |
| | § | |
| **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. AND BEAZLEY INSURANCE COMPANY, INC.,** | § § § § | |
| | § | |
| *Defendants.* | § | |

**PLAINTIFF'S RESPONSE TO NATIONAL UNION'S MOTION TO EXCLUDE EXPERT TESTIMONY AND STRIKE REPORT OF WALTER J. MIX III AND BRIEF IN SUPPORT**

OF COUNSEL:

Barry J. Fleishman (*admitted pro hac vice*)
Tamara D. Bruno (*admitted pro hac vice*)
Elizabeth J. Dye (Texas Bar No. 24097639)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, D.C. 20036-3006
Telephone: (202) 663-9249
barry.fleishman@pillsburylaw.com
tamara.bruno@pillsburylaw.com
elizabeth.dye@pillsburylaw.com

BROWN FOX PLLC

Cortney C. Thomas (Texas Bar No. 24075153)
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Facsimile: (214) 327-5001
cort@brownfoxlaw.com

Dated: February 1, 2021

*Attorneys for RealPage, Inc.*

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................................ 1

ARGUMENTS AND AUTHORITIES ....................................................................................... 2

I. LEGAL STANDARD ....................................................................................................... 2

II. MR. MIX IS A HIGHLY QUALIFIED FINTECH INDUSTRY EXPERT, WHOSE OPINIONS WILL BE ESPECIALLY HELPFUL TO THE TRIER OF FACT DUE TO THE NOVEL AND COMPLICATED NATURE OF FINTECH. .................................. 3

    A. Defendant's Argument is Premised on a Mischaracterization of Mr. Mix's Purpose, Expertise, and Opinions. ............................................................... 3

III. MR. MIX'S OPINIONS ARE NOT IMPERMISSIBLE LEGAL CONCLUSIONS. .......... 5

    A. Federal Courts Permit, and Indeed Encourage, Expert Testimony to Assist in Understanding the Meaning of a Term of Phrase in a Particular Industry. ................. 5

    B. Defendant's Argument Is Belied By Its Own Expert Opinions................................... 8

IV. DEFENDANT'S REMAINING ARGUMENTS GO AGAINST THE WEIGHT OF EVIDENCE, NOT THE ADMISSIBILITY. ............................................................ 9

CONCLUSION............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

Cases

*Apache Corp. v. W&T Offshore, Inc.*,
  No. CV H-15-0063, 2016 WL 10672072 (S.D. Tex. Sept. 28, 2016) ......................................7

*C.P. Interests, Inc. v. California Pools, Inc.*,
  238 F.3d 690 (5th Cir. 2001) ...................................................................................................2

*Citizens State Bank v. Leslie*,
  No. 6-18-CV-00237-ADA, 2020 WL 1065723 (W.D. Tex. Mar. 5, 2020)..............................9

*United States v. Cooks*,
  589 F.3d 173 (5th Cir. 2009) ...................................................................................................9

*First Nat'l State Bank of NJ v. Reliance Elec. Co.*,
  668 F.2d 725 (3d Cir. 1981).....................................................................................................6

*Keegan v. Steamfitters Local Union No. 420 Pension Plan*,
  67 Fed. Appx. 744 (3d Cir. 2003)............................................................................................8

*Kona Tech. Corp. v. S. Pac. Transp. Co.*,
  225 F.3d 595 (5th Cir. 2000) .......................................................................................2, 6, 7, 8

*Launius v. Allstate Ins. Co.*,
  No. 3:06-CV-0579, 2007 WL 1159674 (N.D. Tex. April 18, 2007) (Boyle, J.) ....................10

*Manhattan Re–Ins. Co. v. Safety Nat'l Cas. Corp.*,
  83 Fed Appx. 861 (9th Cir. 2003)............................................................................................6

*Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin.*,
  169 F.3d 747 (Fed. Cir. 1999)..................................................................................................8

*N. River Ins. Co. v. Employers Reins. Corp.*,
  197 F.Supp.2d 972 (S.D. Oh. 2002) ........................................................................................7

*Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*,
  No. CIV.A. 05-281, 2011 WL 204619 (E.D. Pa. Jan. 20, 2011).........................................6, 8

*Primerica Life Ins. Co. v. Gross*,
  No. A-15-CV-759-DAE, 2017 WL 9325510 (W.D. Tex. Oct. 12, 2017) ...............................8

*Puga v. RCX Sols., Inc.*,
  922 F.3d 285 (5th Cir. 2019) ...................................................................................................3

*Rush Presbyterian St. Luke's Medical Center v. Safeco Ins. Co.*,
   722 F. Supp. 485 (N.D. Ill. 1989) ..................................................................................7

*Salomon v. Kroenke Sports & Entm't, LLC,*
   No. 3:15-CV-0666-M, 2019 WL 10631256 (N.D. Tex. Feb. 27, 2019)....................................6

*Simon Wrecking Co., Inc. v. AIU Ins. Co.*,
   530 F.Supp.2d 706 (E.D. Pa. 2008) ................................................................................7

*Smith v. Cont'l Cas. Co.*,
   No. CIV.A.07–1214, 2008 WL 4462120 (M.D. Pa. Sept. 30, 2008), *aff'd*, 347
   Fed. Appx. 812 (3d Cir. 2009)........................................................................................7

*Wellogix, Inc. v. Accenture, L.L.P.*,
   716 F.3d 867 (5th Cir. 2013) ..........................................................................................3

Rules and Regulations

Federal Rules of Evidence
   Rule 702...............................................................................................................................2
   Rule 704...............................................................................................................................3

Plaintiff RealPage, Inc. ("RealPage") submits this Response to Defendant National Union Fire Insurance Company of Pittsburgh, Pa.'s ("Defendant" or "National Union") Motion to Exclude Expert Testimony and Strike Report of Waler [sic] J. Mix III and Brief in Support [Dkt. 109] (the "Motion") and would respectfully show the Court as follows:

## INTRODUCTION

This case turns on the interpretation of the undefined phrase "hold for others," as it appears in the Commercial Crime Policy that National Union sold to RealPage and currently refuses to honor.[1] To assist the trier of fact in doing so, particularly in light of the novel and evolving nature of the financial technologies industry ("FinTech"), RealPage retained as an industry expert witness Walter Mix III, a Managing Director at Berkeley Research Group with more than thirty years of experience in the banking and finance industries, with a particular focus in the developing fields of FinTech, cybersecurity, and advanced technologies such as artificial intelligence. It is Mr. Mix's opinion that, based on his extensive experience and expertise in the FinTech industry, (i) RealPage would be understood to be the holder of payments received from residents in its client properties on behalf of its clients, based on RealPage's direction, management, and control of those funds through its service platform; and (ii) that Stripe, Inc. ("Stripe") did not hold the funds received from the residents in RealPage's client properties, as it simply serves as a conduit through which funds were routed from one point to another at RealPage's direction.

National Union now moves to exclude Mr. Mix's testimony, arguing primarily that (i) he is unqualified to offer his opinions, and (ii) his opinions are impermissible legal conclusions on matters of contract interpretation that rest with the purview of the Court. As to the first, the

---

[1] Defendant Beazley Insurance Company ("Beazley") sold an excess policy to the Commercial Crime Policy and has filed a Motion to Join [Dkt. 111] National Union's Motion. The same arguments raised herein apply equally to Beazley's Motion to Join.

argument is built on either a misunderstanding or mischaracterization of Mr. Mix's role and opinions, which, when corrected, renders the argument inapposite. Moreover, Mr. Mix's significant experience and expertise in the FinTech industry will be particularly helpful in assisting the trier of fact, as FinTech is a new and continually-developing industry based on cutting-edge technology that may be difficult to conceptually navigate for those unfamiliar with it. As to Defendant's second argument, far from being impermissible legal conclusions, Mr. Mix's opinions are exactly the type that the federal courts, including the Fifth Circuit, have expressly stated are not only proper but "prudent." *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000). Finally, Defendant's own expert practices support denial of the instant Motion, as Defendants have hired their own expert witness to opine on "the customary meaning of 'hold for others' in the banking and FinTech industries and who 'held' such funds under that customary meaning." *See* Def.'s Pretrial Disclosures [Dkt. 113] at 2.

Defendant's remaining ancillary arguments scattered throughout its Motion do not challenge the admissibility of Mr. Mix's opinions but rather simply go against the weight of Mr. Mix's opinions, arguments which are best addressed through cross-examination and presentation of contrary evidence at trial. The Court should deny Defendant's Motion.

## ARGUMENTS AND AUTHORITIES

### I.     LEGAL STANDARD

A district court may admit expert testimony that will assist the trier of fact in either understanding the evidence or determining a fact in issue. *C.P. Interests, Inc. v. California Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001) (describing FED. R. EVID. 702). Rule 702 states that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if

(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." "In making such rulings, district courts 'function as gatekeepers and permit only reliable and relevant expert testimony to be presented to the jury.'" *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013). In ruling on the admissibility of expert opinion evidence, the trial court has "broad discretion." *Id.* Further, "[t]he basic approach to opinions, lay and expert, in these rules is to admit them when helpful to the trier of fact." Ad. Comm. Notes to FED. R. EVID. 704. "[T]he rejection of expert testimony is the exception rather than the rule." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019).

II.  **MR. MIX IS A HIGHLY QUALIFIED FINTECH INDUSTRY EXPERT, WHOSE OPINIONS WILL BE ESPECIALLY HELPFUL TO THE TRIER OF FACT DUE TO THE NOVEL AND COMPLICATED NATURE OF FINTECH.**

Defendant first argues that Mr. Mix is not qualified to opine in this matter because with respect to his "opinions regarding what it means to 'hold' funds as that term is used in the policy . . . he appears to have no meaningful experience interpreting the definition of 'hold' as that term is used in the policy or determining the circumstances under which a party 'holds' funds." Motion at 6-7. This contention permeates Defendant's other arguments, ultimately being repackaged for their final argument. *See*, *e.g.*, Motion at 8 ("Mix opines that 'hold' as used in the policy . . ."), 9 ("[H]e never attempts to explain what, if any, experience he has . . . interpreting the policy term 'hold'"), and 12 ("Mix has no meaningful experience regarding the definition of "hold" as that term is used in the policy").

    A.  **Defendant's Argument is Premised on a Mischaracterization of Mr. Mix's Purpose, Expertise, and Opinions.**

As a threshold matter, Defendant premises its entire argument on a mischaracterization of Mr. Mix's purpose, expertise, and opinions. More specifically, Defendant presents Mr. Mix as an

expert interpreter of insurance contracts only to then turn and proclaim that he does not have any relevant or applicable experience in interpreting insurance contracts. However, RealPage has not tendered Mr. Mix as an expert on insurance contracts, and he offers no opinions "regarding what it means to 'hold' funds as that term is used in the policy." *See* Motion at 6. In fact, there are only two references to the policy at all in Mr. Mix's report, and those are only in the factual background section to note the contractual provision at issue and to state that he understands that the term "hold for others" is not defined in the contract. *See* Mix Report at ¶ 16-17 (APP 14).[2] These points are not controverted by any party.

    Instead, Mr. Mix is an expert in the area of FinTech and related technological and financing services who offers an industry expert opinion as to how the word "hold" and the phrase "hold for others" would be understood by those in the industry. This is an entirely appropriate use of expert testimony to assist the trier of fact in contractual interpretation (*see* Section III.A below). Through its Affirmative Motion for Partial Summary Judgment [Dkt. 75 & 76], RealPage argues, among other things, that (1) the term "hold for others" is unambiguous under the policy and (2) even if there is more than one reasonable interpretation of the term, any ambiguity must be construed in RealPage's favor against the insurers as a matter of law. *See generally* RealPage's MSJ Brief at Mot. Summ. J. at 12-21. However, if the Court ultimately rejects these arguments or determines that there is a dispute as to the application of the facts to the ultimate interpretation of the policy, Mr. Mix's testimony will be particularly helpful, as the Fintech industry is a relatively new and rapidly developing industry that relies upon complex technologies and is not readily understood.

---

[2] National Union attached a copy of Mr. Mix's Report as Exhibit A to its Appendix in support of its Motion to Exclude [Dkt. 110]. All citations to Mr. Mix's Report are to that Appendix.

More specifically, Mr. Mix will help the trier of fact understand that the FinTech industry consists of companies that use technology to improve financial activities, such as online payment processing. *See* Mix Report ¶ 8 (APP 8). These service providers generally operate separate from and independent of traditional banks and financial institutions. *Id.* In this case, RealPage contracted with a FinTech company (Stripe) to facilitate RealPage's payment processing for certain of its clients. *Id.* ¶ 11 (APP 10). Compared to a traditional banking relationship, RealPage created virtual accounts with Stripe, which were a means of accounting for and allocating resident funds to be sent to RealPage's property manager clients and to RealPage for its associated fees. *Id.* ¶ 12 (APP 10). As detailed at length in Mr. Mix's report, the relationship between RealPage and Stripe is customary in the FinTech industry, complex, and not readily understood. *See generally id.* ¶¶ 6-15. Mr. Mix is more than qualified to assist the trier of fact in understanding the FinTech industry, the role of a payment processor like Stripe, and ultimately who the industry would understand as holding the collected funds. *See id.* ¶¶ 18-33.

Tellingly, in attacking Mr. Mix as unqualified, National Union has not actually addressed Mr. Mix's qualifications as a FinTech industry expert. Indeed, his Report and Curriculum Vitae make abundantly clear that he is an expert in this rapidly evolving field. *See generally id.* ¶ 1 & Ex. A (APP 6, 24). Given the premise underlying Defendant's Motion (that Mr. Mix is being proffered as an expert in contract interpretation) and National Union's failure to address Mr. Mix's qualifications as an expert in the FinTech industry, Defendant's Motion must be denied.

### III. MR. MIX'S OPINIONS ARE NOT IMPERMISSIBLE LEGAL CONCLUSIONS.

#### A. Federal Courts Permit, and Indeed Encourage, Expert Testimony to Assist in Understanding the Meaning of a Term of Phrase in a Particular Industry.

Defendant next argues that Mr. Mix's opinion that "the term 'hold' as used in the policy 'means the rights to manage, control and/or direct funds'" is an impermissible legal conclusion.

Motion at 8. As an initial matter, National Union mischaracterizes Mr. Mix's opinions. The full text of the language quoted by Defendant does not reference the policy and instead states "In my experience in the banking and FinTech industry, when the term 'hold' is used with respect to funds in a financial institution account, the term simply means the rights to manage, control, and/or direct funds." Mix Report ¶ 17 (APP 14). National Union supports its argument that this statement is a legal conclusion with a single case from the Northern District of Texas for the general proposition that expert testimony on contractual interpretation is an inappropriate encroachment on the roles of the judge and jury. *Id.* (citing *Salomon v. Kroenke Sports & Entm't, LLC,* No. 3:15-CV-0666-M, 2019 WL 10631256, at *7 (N.D. Tex. Feb. 27, 2019)). However, again Defendant mischaracterizes the nature of Mr. Mix's purpose and opinions and misunderstands Plaintiff's arguments.

Federal courts, and in particular the Fifth Circuit, have routinely held that offering expert testimony that assists the trier of fact in understanding an undefined contractual term as that term may be understood in "a particular field for the purposes of obtaining explanation of the technical meaning of terms used" is not only appropriate, but "prudent." *Kona*, 225 F.3d at 611; *see, e.g., Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, No. CIV.A. 05-281, 2011 WL 204619, at *13 (E.D. Pa. Jan. 20, 2011) ("[N]umerous courts, both within and outside of the Third Circuit, have permitted expert testimony as to custom and practice as to the meaning of a particular contract term within an insurance policy, so long as the expert's testimony does not venture into the realm of purely legal contract construction or interpretation.) (citing *First Nat'l State Bank of NJ v. Reliance Elec. Co.*, 668 F.2d 725, 731 (3d Cir. 1981) (affirming use of expert testimony as to customs in the banking industry, even in the face of an unambiguous contract); *Manhattan Re– Ins. Co. v. Safety Nat'l Cas. Corp.*, 83 Fed Appx. 861, 863 (9th Cir. 2003) (noting that expert

testimony about insurance industry contract drafting custom and practice was admissible so long as expert "did not improperly testify about the legal interpretation of contract clauses"); *Smith v. Cont'l Cas. Co.*, No. CIV.A.07–1214, 2008 WL 4462120, at *1 (M.D. Pa. Sept. 30, 2008), *aff'd*, 347 Fed. Appx. 812 (3d Cir. 2009) (recognizing that expert testimony as to industry customs and practice may be helpful so long as expert does not engage in legal construction of insurance policy terms); *Simon Wrecking Co., Inc. v. AIU Ins. Co.*, 530 F.Supp.2d 706, 715–16 (E.D. Pa. 2008) (considering expert testimony regarding custom and trade usage of term "sudden and accidental" in insurance policy); *N. River Ins. Co. v. Employers Reins. Corp.*, 197 F.Supp.2d 972, 990–91 (S.D. Oh. 2002) (permitting expert testimony as to the custom, usage, or practice in the American reinsurance market as to the "follow the fortunes" doctrine).

Further, "[e]xpert testimony on the proper interpretation of contract terms may be admissible when the meaning depends on trade or industry practice." *Apache Corp. v. W&T Offshore, Inc.*, No. CV H-15-0063, 2016 WL 10672072, at *2 (S.D. Tex. Sept. 28, 2016). "It is permissible for experts to testify about the customs and usages in an industry, and to amplify the terms of a contract if customs and usages shed light on the meaning of those terms." *Rush Presbyterian St. Luke's Medical Center v. Safeco Ins. Co.*, 722 F. Supp. 485, 497 (N.D. Ill. 1989). In fact, the Fifth Circuit Court of Appeals has found that courts "must give consideration to the meaning attributed to that term in the industry," *Kona*, 225 F.3d at 611, which makes Mix's testimony all the more helpful and appropriate.

Mr. Mix's testimony in this case accomplishes exactly the goal stated by these cases: provide context for the trier of fact to assist in determining the meaning of the term "hold for others" as it may be understood specifically in the FinTech industry. Defendant attempts to distract from this by suggesting that this contradicts Plaintiff's position in its Partial Motion for Summary

Judgment that an undefined term should generally be given its plain meaning. Motion at 8. However, Defendant fails to understand that the admission of expert testimony on a term's meaning in the context of a specific industry "does not trump other canons of contract interpretation, but rather cooperates with them." *Keegan v. Steamfitters Local Union No. 420 Pension Plan*, 67 Fed. Appx. 744, 750 (3d Cir. 2003) (quoting *Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin.*, 169 F.3d 747, 753 (Fed. Cir. 1999)). Furthermore, as discussed above, there is no inconsistency in Plaintiff's position here and its Motion for Partial Summary Judgment—the Court may ultimately disagree with RealPage's legal arguments. The addition of expert testimony of this nature supplements other canons of construction to provide additional insight into the meaning of an undefined term in the event that the trier of fact decides that more context would be helpful. Regardless, Mr. Mix's testimony will assist the trier of fact in applying the particular facts here to the ultimate interpretation of the policy.

Lastly, to the extent that Defendant suggests that Mr. Mix's opinion is a legal conclusion because it opines on the determinative issue in this case, that suggestion is misguided. "Under Federal Rule of Civil Procedure 704, an expert may provide an opinion that embraces an ultimate issue to be decided by the trier of fact." *Nationwide Life Ins.*, 2011 EL 204619 (citing FED. R. EVID. P. 704). "While it is the court's province to determine the legal meaning of a contract, the court may rely on an expert experienced in a specific field to obtain explanations of 'the technical meaning of terms used in the industry.'" *Primerica Life Ins. Co. v. Gross*, No. A-15-CV-759-DAE, 2017 WL 9325510, at *2 (W.D. Tex. Oct. 12, 2017) (quoting *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000)).

### B. Defendant's Argument Is Belied By Its Own Expert Opinions.

Although the abundance of case law encouraging industry expert testimony on contractual term meanings defeats any notion that Mr. Mix's opinions are impermissible legal conclusions, it

is noteworthy that Defendant's own expert practice in this case is inconsistent with the positions it now takes. On the one hand, National Union accuses Mr. Mix's opinions of being legal conclusions because these opinions touch on how the term "hold for others" would be understood in the FinTech industry. On the other hand, Defendants have hired their own expert to opine on "the customary meaning of 'hold for others' in the banking and Fintech industries and who 'held' such funds under that customary meaning" and to conclude that RealPage did not "hold for others" the funds at issue. *See* Def.'s Expert Designations [Dkt. 54] at 1-2 (Aug. 27, 2020); *see also* Def's Pretrial Disclosures [Dkt. 113] at 2. Defendant cannot have it both ways. Although the Motion claims otherwise, National Union's practice recognizes what the case law above states. The Motion to Exclude Mr. Mix's testimony should be denied.

### IV.  DEFENDANT'S REMAINING ARGUMENTS GO AGAINST THE WEIGHT OF EVIDENCE, NOT THE ADMISSIBILITY.

Defendant's remaining arguments challenge the weight of Mr. Mix's testimony, not its admissibility, which are not grounds to exclude an expert's testimony. When a party argues that an expert's testimony "ignores relevant facts, such an argument goes to the weight that should be afforded to his opinion." *Citizens State Bank v. Leslie*, No. 6-18-CV-00237-ADA, 2020 WL 1065723, at *4 (W.D. Tex. Mar. 5, 2020). In such a case, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009).

Defendant repeatedly complains that Mr. Mix's deposition testimony regarding the foundations for some of his opinions is unsatisfactory. Motion at 7 ("Rather than explain how he dealt with those issues in practice or how his experience supports his that those conclusions stem from his 'experience in the banking and FinTech industry" and are "consistent with my

understanding of the custom and practice in the FinTech industry."); *see also*, *id.* at 8 ("Mix admits that he did not consult with any of his peers or colleagues regarding the definition he offers."); *id.* at 9 (stating that "Mix's support for this definition begins and ends with" his experience in the banking and FinTech industry and the arrangement between RealPage and Stripe); *see id.* ("When pressed to explain his interpretation during his deposition, Mix stated that the definition is supported by the Federal Financial Institutions Examination Council 'Outsourcing Technology Services' IT Examination Handbook, which he cites in his report for a different proposition."). If National Union has "concerns over the presentation of 'shaky' expert testimony," it may address these concerns "through forceful cross examination and the presentation of contrary evidence at trial." *Launius v. Allstate Ins. Co.*, No. 3:06-CV-0579, 2007 WL 1159674 at *2 (N.D. Tex. Apr. 18, 2007) (Boyle, J.).

## CONCLUSION

For the reasons discussed above, RealPage respectfully requests that the Court deny National Union's Motion to Exclude the Expert Testimony of Walter J. Mix III in its entirety and grant RealPage such other and further relief to which it may show itself justly entitled.

| | |
|---|---|
| Dated: February 1, 2021 | Respectfully submitted, |
| OF COUNSEL: | /s/ Cortney C. Thomas |
| | Cortney C. Thomas (Texas Bar No. 24075153) |
| Barry J. Fleishman (*admitted pro hac vice*) | BROWN FOX PLLC |
| Tamara D. Bruno (*admitted pro hac vice*) | 8111 Preston Road, Suite 300 |
| Elizabeth J. Dye (Texas Bar No. 24097639) | Dallas, Texas 75225 |
| PILLSBURY WINTHROP | Telephone: (214) 327-5000 |
| SHAW PITTMAN LLP | Facsimile:  (214) 327-5001 |
| 1200 Seventeenth Street NW | cort@brownfoxlaw.com |
| Washington, D.C. 20036-3006 | |
| Telephone: (202) 663-9249 | |
| barry.fleishman@pillsburylaw.com | |
| tamara.bruno@pillsburylaw.com | |
| elizabeth.dye@pillsburylaw.com | *Attorneys for Plaintiff RealPage, Inc.* |

## **CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.