**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **REALPAGE, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:19-cv-01350-B** |
| | § | |
| **NATIONAL UNION FIRE** | § | |
| **INSURANCE COMPANY OF** | § | |
| **PITTSBURGH, PA. AND BEAZLEY** | § | |
| **INSURANCE COMPANY, INC.,** | § | |
| | § | |
| *Defendants.* | § | |

### PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO NATIONAL UNION'S MOTION TO EXCLUDE TESTIMONY AND STRIKE THE EXPERT REPORT OF OLIE JOLSTAD

OF COUNSEL:

Barry J. Fleishman (*admitted pro hac vice*)
Tamara D. Bruno (*admitted pro hac vice*)
Elizabeth J. Dye (Texas Bar No. 24097639)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, D.C. 20036-3006
Telephone: (202) 663-9249
barry.fleishman@pillsburylaw.com
tamara.bruno@pillsburylaw.com
elizabeth.dye@pillsburylaw.com

Dated:  February 1, 2021

BROWN FOX PLLC

Cortney C. Thomas (Texas Bar No. 24075153)
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Facsimile:  (214) 327-5001
cort@brownfoxlaw.com

*Attorneys for RealPage, Inc.*

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ..................................................................................................3

ARGUMENTS AND AUTHORITIES ...............................................................................5

I.   LEGAL STANDARD ...............................................................................................5

II.  MR. JOLSTAD'S OPINIONS ARE RELIABLE BECAUSE HIS METHODOLOGY IS BASED ON CUSTOMS, PRACTICES, AND STANDARDS OF THE INSURANCE INDUSTRY. ....................................................................................6

   A.  Mr. Jolstad Provides a Framework for Adjusting Claims In Accordance with Insurance Industry Customs, Practices, and Standards ......................................7

   B.  Mr. Jolstad Relies on Authoritative Sources, Industry Norms, and His Experience to Support his Opinions. ...............................................................10

   C.  The Court Should Reject National Union's Reliance on Inapposite Caselaw .............11

III. MR. JOLSTAD'S "OPINION 2" IS BASED UPON APPLICABLE INSURANCE INDUSTRY CUSTOMS, PRACTICES, AND STANDARDS, AND WILL ASSIST THE JURY IN EVALUATING REALPAGE'S BAD FAITH CLAIM. ...........................13

IV.  MR. JOLSTAD'S "OPINION 3" ASSISTS THE JURY BY EXPLAINING THE STANDARD FOR TIMELY INVESTIGATIONS AND CLAIMS HANDLING. .............15

V.   DEFENDANT'S ARGUMENT IS BELIED BY ITS OWN EXPERT OPINIONS ...........17

CONCLUSION .................................................................................................................18

TABLE OF AUTHORITIES

Page(s)

Cases

*United States v. 14.38 Acres of Land, More or Less, Situated in Leflore County, Mississippi*,
  80 F.3d 1074 (5th Cir. 1996) ......................................................................................5, 6, 11

*Admiral Ins. Co. v. Petron Energy, Inc.*,
  Case No. 3:11-CV-02524, Order on Motion to Exclude at 1 (September 3,
  2013) (Lynn, J.)...................................................................................................................14

*Agredano v. State Farm Lloyds*,
  975 F.3d 504 (5th Cir. 2020) ..............................................................................................16

*Am. Home Assur. Co. v. Cat Tech, L.L.C.*,
  717 F. Supp. 2d 672 (S.D. Tex. 2010), *rev'd on other grounds*, 660 F.3d 216
  (5th Cir. 2011)......................................................................................................................9

*Beneplace, Inc. v. Pitney Bowes, Inc.*,
  A-15-CV-65-LY-ML, 2016 WL 11582931 (W.D. Tex. Sept. 20, 2016) ................................7

*Blottin v. Mary Kay Inc.*,
  No. 3-10-CV-1905-M-BD, 2012 WL 13026814 (N.D. Tex. Aug. 22, 2012)...........................5

*Collins v. Safeco Ins. Co. of Indiana*,
  3:18-CV-01788-X, 2020 WL 95488 (N.D. Tex. Jan. 8, 2020)...............................................10

*Corinth Inv'r Holdings, LLC v. Evanston Ins. Co.*,
  4:13-CV-00682, 2014 WL 7146040, at  *5 (E.D. Tex. Dec. 15, 2014) ................................16

*Crow v. United Ben. Life Ins. Co.*,
  CIV. A. 3:00CV1375G, 2001 WL 285231 (N.D. Tex. Mar. 16, 2001).............................5, 12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
  509 U.S. 579 (1993)...........................................................................................................5, 6

*Denison Custom Homes, Inc. v. Zurich Am. Ins. Co.*,
  CIV.A. V-03-24, 2005 WL 5994166 (S.D. Tex. Mar. 15, 2005) ...........................................18

*Eagle Oil & Gas Co. v. Travelers Prop. Cas. Co. of Am.*,
  7:12-CV-00133-O, 2014 WL 3744976 (N.D. Tex. July 30, 2014) .........................................6

*Essex Ins. Co. v. Structural Shop, Ltd.*,
  No. 15 C 2806, 2017 WL 2224879 (N.D. Ill. May 22, 2017) ................................................13

*Garcia v. City of Amarillo, Tex.*,
  2:18-CV-95-Z-BR, 2020 WL 5642763 (N.D. Tex. Feb. 26, 2020).........................................6

*Gorsky v. Harris County, Tex.*,
    CV H-16-2877, 2020 WL 533114 (S.D. Tex. Feb. 3, 2020) ....................................................6

*GuideOne Elite Ins. Co. v. Mount Carmel Ministries*,
    676 Fed. Appx. 269 (5th Cir. 2017) ....................................................................................12

*Haymore v. Shelter Gen. Ins. Co.*,
    3:19-CV-365-TSL-RHW, 2020 WL 1536571 (S.D. Miss. Mar. 30, 2020) ........................9, 11

*McCaleb v. Rely Transp., Inc.*,
    4:19-CV-00640-O, 2020 WL 8242164 (N.D. Tex. Dec. 24, 2020) ..........................................6

*Peckham v. Cont'l Cas. Ins. Co.*,
    895 F.2d 830 (1st Cir. 1990) ...............................................................................................15

*Penford Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, *PA*,
    662 F.3d 497 (8th Cir. 2011) ..............................................................................................14

*Rubin v. United States Life Ins. Co. in the City of New York*,
    15-CV-00384-PAB-NYW, 2016 WL 11165513 (D. Colo. July 1, 2016) ..........................9, 10

*Sowell v. United States*,
    CIV.A.3:97-CV-1519-G, 1998 WL 531884 (N.D. Tex. Aug. 17, 1998), *aff'd
    sub nom. Estate of Sowell v. United States*, 198 F.3d 169 (5th Cir. 1999) ......................13, 14

*Xcoal Energy & Res. v. New York Marine & Gen. Ins. Co.*,
    CV H-11-645, 2013 WL 12137321 (S.D. Tex. Aug. 15, 2013) .............................................14

<u>Statutes and Codes</u>

Texas Insurance Code
    Section 542.055 ....................................................................................................................11
    Section 542.056 ...........................................................................................................11, 15, 16
    Section 542.058 ...........................................................................................................11, 15, 16

<u>Rules and Regulations</u>

Federal Rules of Evidence
    Rule 702 ................................................................................................................................5
    Rule 704 ..........................................................................................................................6, 14

Plaintiff, RealPage, Inc. ("RealPage") submits this brief in support of its Response in Opposition to National Union Fire Insurance Company of Pittsburgh, Pa.'s ("National Union") Motion to Exclude Testimony and Strike the Expert Report of Olie Jolstad (the "Motion") [Dkt. 106] and would respectfully show that the Motion should be denied in its entirety.

## INTRODUCTION[1]

Contrary to National Union's arguments, Olie R. Jolstad, SCLA, FACFEI ("Mr. Jolstad"), RealPage's insurance expert, (i) explains the methodology and bases for the opinions[2] in his Expert Report; (ii) does not improperly offer conclusions of fact and law; and (iii) provides opinions related to the customs, standards, and practices of the insurance industry, which will assist the jury in evaluating RealPage's claims under Chapters 541 and 542 of the Texas Insurance Code. Nevertheless, National Union broadly claims that Mr. Jolstad's opinions are "unreliable, irrelevant, based on improper conclusions of fact and law and will not assist the trier of fact in determining any matter in dispute" (Motion [Dkt. 106] at 1). This is wholly incorrect and mischaracterizes Mr. Jolstad's expert opinions.

First, National Union is wrong that Mr. Jolstad's "Opinion 1" is "unreliable" because it "includes opinions of law and fact" and "is based on speculation about National Union's motivations." Opinion 1 is not "based on improper contract interpretation" but, as explained in

---

[1] For efficiency, RealPage incorporates the Factual Background from its Brief in Support of its Affirmative Motion for Partial Summary Judgment on Its Declaratory Judgment and Breach of Contract Claims ("MSJ Brief") [Dkt. 76] and in its Omnibus Response Brief in Opposition to Defendants' Motions for Summary Judgment on RealPage's Claims ("Response Brief") [Dkt. 98]. In connection with its MSJ Brief [Dkt. 76] and Response Brief [Dkt. 98], RealPage filed Appendices [Dkt. 77, 85, 86 & 99] which are incorporated by reference as if fully set forth herein. Each of the exhibits included in the MSJ Appendixes begin with the prefixes "Ex. A-_," "Ex. B-," and "Ex. C-." Where this Response Brief relies on additional exhibits that were not included in the original and sealed Appendixes, the exhibits will begin with the prefix "Ex. D-_," or in the case of certain new sealed exhibits, "Ex. E-_."

[2] National Union summarily lists and describes Mr. Jolstad's opinions as "Opinion 1," "Opinion 2," and "Opinion 3," though his full opinions are explained under each "Opinion" summary header. For the purposes of this Response Brief and consistency, RealPage will adopt National Union's language where applicable.

the "Expert Report of Olie R. Jolstad, SCLA, FACFEI" ("Jolstad Report"), instead provides the customary framework that insurance adjusters use when analyzing similar claims, which will assist the trier of fact in evaluating RealPage's claims under Chapter 541 of the Texas Insurance Code. (Jolstad Report at 9-10 [Dkt. 108 at App. 13-14])[3]. "Opinion 1" also identifies the authoritative sources, industry standards, and documents that Jolstad considered to reach his conclusion that National Union's investigation was unreasonably delayed.

Second, National Union's argument that Mr. Jolstad's "Opinion 2" is based on conclusions of fact and law and speculation is wrong because Mr. Jolstad identifies the insurance industry customs, practices, and standards and documents that form the basis for this opinion.  Further, National Union relies on decisions in which courts permitted Mr. Jolstad to testify regarding customs, practices, and standards because it would be helpful to the trier of fact.

Finally, National Union erroneously says that Mr. Jolstad's "Opinion 3" should be excluded because "no specialized knowledge is necessary to assist the trier of fact in applying the statutory timetable," but this argument ignores that timeliness and reasonableness are ingrained in insurance customs, practices, and standards.  Mr. Jolstad's specialized knowledge gained from his career in the insurance industry will assist the jury in determining whether National Union delayed payment of RealPage's claim after it had "all items, statements and forms" necessary to make a coverage determination as required by the Texas Insurance Code, Endorsement 22 of the Primary Crime Policy, and National Union's own internal claims handling policies and guidelines.

---

[3]  National Union attached a copy of Mr. Jolstad's Report as Exhibit A to its Appendix in support of its Motion to Exclude [Dkt. 108].  Any citations to Mr. Jolstad's Report includes the pagination of both his Expert Report and the Appendix for ease of reference.

## FACTUAL BACKGROUND

In May 2018, one or more unauthorized parties used a targeted phishing scheme to obtain and to alter the account credentials of a RealPage employee (the "Fraud Incident").[4]  RealPage has explained the undisputed facts of the Fraud Incident in its MSJ Brief and incorporates it into its response by reference.[5]

On May 8, 2018, RealPage provided notice of the Fraud Incident under the Policies.[6]  On May 25, 2018, Jodi Bass acknowledged RealPage's claim on behalf of National Union.[7]  Ms. Bass did not request information from RealPage until May 29, 2018, or 21 days after receiving notice of RealPage's loss.[8]  In response, RealPage provided National Union with extensive information and documents and submitted its final Proof of Loss to National Union on September 21, 2018.[9]

On September 28, 2018, National Union confirmed receipt of the Proof of Loss.[10]  In October 2018, RealPage's broker, Marsh, sent several emails to National Union requesting an update on the status of its investigation into RealPage's claim.[11]  On October 22, 2018, David Yesh, RealPage's Marsh representative, emailed Ms. Bass because a month had passed since

---

[4]  Sealed Thomas Decl., Ex. B-6 [Dkt. 85], Cylance Report at 3-4 (APP148-49); *see also* Thomas Decl., Ex. A-8 [Dkt. 77], Jan. 4, 2019 Letter from National Union at 6 (APP171); Ex. A-9 [Dkt. 77-1], Apr. 25, 2019 Letter from National Union at 8 (APP188).

[5]  RealPage's MSJ Brief at 8-9.

[6]  National Union admits that "on May 8, 2018, an email was sent" and that the email speaks for itself. National Union Answer, ¶ 32.

[7]  February 1, 2021 Declaration of Cortney C. Thomas ("Resp. Decl."), Ex. D-1, May 25, 2018 acknowledgment email from National Union (APP708).

[8]  Resp. Decl., Ex. D-2, May 29, 2018 letter from National Union to RealPage with requests for information (APP711-714).

[9] Thomas Decl., Ex. C-7 [Dkt. 99], Sept. 19, 2018 email between Jason Cables of Ankura and insurers, including National Union (APP653); *see also* Ex. A-7 [Dkt. 77], RealPage's sworn Proof of Loss (APP160-164).

[10] Resp. Decl., Ex. D-3, Sept. 28, 2018 email from Jodi Bass acknowledging RealPage's Proof of Loss (APP722).

[11] February 1, 2021 Sealed Supplemental Declaration of Cortney C. Thomas ("Sealed Resp. Decl."), Ex. E-4, Oct. 8, 2018 email exchange between Marsh and Jodi Bass regarding National Union's investigation (APP726-28); *Id.*, Oct. 15, 2018 email from David Yesh to Jodi Bass requesting a status report on investigation (APP729-31).

---

RealPage submitted its Proof of Loss and she had not requested any additional documentation.[12] Ms. Bass responded by incorrectly stating, "[a]s you are aware, we have 90 days after a Proof of Loss is filed" to request information and claimed that National Union was investigating RealPage's claim and had retained a forensic accountant.[13] On November 6, 2018, Mr. Yesh emailed Ms. Bass and observed that no meaningful investigation of RealPage's claim had occurred.[14] On December 8, 2018, Mr. Yesh emailed Ms. Bass because National Union had still not made a coverage determination in accordance with Endorsement 22 of the Primary Crime Policy.[15] In response, on December 11, 2018, Ms. Bass claimed that National Union had complied with Endorsement 22 of the Primary Crime Policy and accused RealPage of failing to provide "expected information."[16] However, in November and December 2018, RealPage had provided National Union with extensive documentation and information responsive to its requests for information.[17]

On January 4, 2019, National Union sent a letter admitting that the Fraud Incident triggered coverage under the Primary Crime Policy's Computer Fraud insuring agreement, but accepted coverage only for a limited portion of RealPage's losses consisting of diverted funds that it calculated as representing transactional fees owed to RealPage by its clients.[18] National Union asserted that the Primary Crime Policy did not cover the majority of RealPage's losses consisting

---

[12] Sealed Resp. Decl., Ex. E-5, Oct. 22, 2018 email exchange between David Yesh of Marsh and Jodi Bass (APP733).

[13] *Id.*

[14] Sealed Resp. Decl., Ex. E-7, Nov. 6, 2018 email exchange between David Yesh of Marsh and Jodi Bass and Barbara Leone (APP745).

[15] Sealed Resp. Decl., Ex. E-8, Dec. 8, 2018 email from David Yesh to Jodi Bass regarding Endorsement 22 of the Primary Crime Policy (APP758).

[16] Resp. Decl., Ex. D-9, Dec. 11, 2018 email from Jodi Bass to Danny Downs (APP762-63).

[17] Sealed Thomas Decl., Ex. B-16 [Dkt. 85], RealPage's Responses to National Union's Nov. 30, 2018 Request for Information (APP335-39); Ex. B-17 [Dkt. 85], RealPage's Responses to National Union's Dec. 14, 2018 Request for Information (APP553-64).

[18] Thomas Decl., Ex. A-8 [Dkt. 77], Jan. 4, 2019 Letter from National Union to RealPage, at 7 (APP172).

of diverted funds and denied coverage for these amounts, claiming that RealPage did not "own" the funds or "hold the funds for others."[19]  Nevertheless, National Union requested even more information and documentation, which RealPage provided in February and April of 2019.[20] National Union issued a final coverage determination letter on April 25, 2019.[21]

## ARGUMENTS AND AUTHORITIES

### I.    LEGAL STANDARD.

"[W]hen faced with a proffer of expert testimony, a trial judge must first determine whether the expert is proposing to testify to (1) scientific, technical, or specialized knowledge that (2) will assist the trier of fact to understand or determine a fact in issue."  *Crow v. United Ben. Life Ins. Co.*, CIV. A. 3:00CV1375G, 2001 WL 285231, at *2 (N.D. Tex. Mar. 16, 2001).  National Union's arguments to exclude Mr. Jolstad rely on *Daubert*, and so the liberal admissibility standards in favor of allowing expert testimony apply, where "the rejection of expert testimony is the exception rather than the rule," FED. R. EVID. 702, adv. comm. notes (2000), and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land, More or Less, Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996).

"Courts routinely reject challenges to the admissibility of expert testimony based on arguments that the expert failed to take into account certain data in forming his or her opinions." *Blottin v. Mary Kay Inc.*, No. 3-10-CV-1905-M-BD, 2012 WL 13026814, at *3 (N.D. Tex. Aug.

---

[19] *Id.*

[20] Thomas Decl., Ex. A-18 [Dkt. 77-1], RealPage's Responses to National Union's Feb. 19, 2019 Request for Information (APP566); Ex. A-19 [Dkt. 77-1], RealPage's Responses to National Union's Feb. 25, 2019 Request for Information; (APP568-571).

[21] Thomas Decl., Ex. A-9 [Dkt. 77-1], National Union's April 25, 2019 Letter at 8 (APP188).

22, 2012). "Experts should be excluded only if their testimony is so fundamentally unsupported that it cannot possibly help the factfinder." *Garcia v. City of Amarillo, Tex.*, 2:18-CV-95-Z-BR, 2020 WL 5642763, at \*4 (N.D. Tex. Feb. 26, 2020).

Further, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." *McCaleb v. Rely Transp., Inc*., 4:19-CV-00640-O, 2020 WL 8242164, at \*1 (N.D. Tex. Dec. 24, 2020) (internal quotations omitted) (citing FED. R. EVID. 704). And when opinion testimony combines opinions on law and fact, the question for the Court is "whether the opinion will 'help the trier of fact to understand the evidence or to determine a fact in issue.'" *Gorsky v. Harris County, Tex.*, CV H-16-2877, 2020 WL 533114, at \*6 (S.D. Tex. Feb. 3, 2020). Under *Daubert*, it is more appropriate for a party to present its case in opposition to the expert's testimony because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *14.38 Acres*, 80 F.3d at 1078. In any event, National Union's challenges to Mr. Jolstad's testimony are baseless and its Motion should be denied.

## II. MR. JOLSTAD'S OPINIONS ARE RELIABLE BECAUSE HIS METHODOLOGY IS BASED ON CUSTOMS, PRACTICES, AND STANDARDS OF THE INSURANCE INDUSTRY.

National Union argues that Mr. Jolstad's opinions are unreliable, but completely ignores the fact that Mr. Jolstad describes in detail the methodology used to reach his opinions (Jolstad Report at 9-10 [Dkt. 108 at App. 13-14]), and this is problematic because "the *Daubert* analysis focuses on the reasoning or methodology employed by the expert, not the ultimate conclusion." *Eagle Oil & Gas Co. v. Travelers Prop. Cas. Co. of Am*., 7:12-CV-00133-O, 2014 WL 3744976, at \*3 (N.D. Tex. July 30, 2014). The test of reliability "is a flexible one," and a trial court has

"wide latitude in deciding how to determine reliability, just as it has considerable discretion with respect to the ultimate reliability determination." *Id.*

      **A.**      **Mr. Jolstad Provides a Framework for Adjusting Claims In Accordance with Insurance Industry Customs, Practices, and Standards.**

Mr. Jolstad's opinions are reliable because his methodology is based on his specialized knowledge of insurance customs, practices, and standards gleaned from forty-two years in the insurance industry, and are further supported by National Union's own internal policies, standards, and guidelines. National Union argues that Mr. Jolstad's "Opinion 1" is "based on improper contract interpretation" and offers an "interpretation of disputed policy terms," [Dkt. 106 at 9] and that Mr. Jolstad "has no specialized knowledge" regarding the term "hold for others." [Dkt. 106 at 14]. But this is irrelevant because Mr. Jolstad does not offer an opinion on what the term "hold for others" means in the Primary Crime Policy. Further, "just because [an expert] opines on the terms of a contract does not mean his conclusions are necessarily legal." *Beneplace, Inc. v. Pitney Bowes, Inc.*, A-15-CV-65-LY-ML, 2016 WL 11582931, at *4 (W.D. Tex. Sept. 20, 2016). Rather, Mr. Jolstad provides the trier of fact with the customary framework that insurance adjusters use when analyzing a coverage claim that may depend on an undefined term, such as "hold for others."[22] (Jolstad Report at 11-14 [Dkt. 108 at App. 15-18]). Mr. Jolstad's methodology in forming his opinions of National Union's conduct applied "the same or similar methods used by other experts in the insurance industry" when "investigating claims, determining coverage, examining reports in relation to the claim, [and] evaluating the scope of loss." (Jolstad Report at 9-10 [Dkt. 108 at App. 13-14]). And Mr. Jolstad developed the opinions contained in his Expert

---

[22] Although the Parties have argued that the term "holds for others" is unambiguous, the Court could still find otherwise.

Report based on his forty-two years of experience in the insurance industry (Jolstad Report at 3-4 [Dkt. 108 at App. 7-8]]), authoritative text, and documents available when his report was issued.[23]

Specifically, National Union argues that Mr. Jolstad provided no explanation for his statement that "National Union completely ignored RealPage's control of the funds in its denial of coverage." (Motion [Dkt. 106] at 13].[24]  This misstates Mr. Jolstad's first opinion.  In connection with the insurance industry standard that insurance adjusters are "to communicate openly, honestly, and fairly with their insured, and give, at a <u>minimum</u>, equal regard to the insured's interest as that of the insurance carrier"  (Jolstad Report at 10 [Dkt. 108, App. 14]), Mr. Jolstad refers to "emails and investigation reports" that RealPage provided to National Union, which demonstrated that "RealPage has absolute control over the funds paid by residents and how they are distributed." (Jolstad Report at 11 [Dkt. 108, App. 15]).[25]   Based on his review of these documents, Mr. Jolstad opines that National Union did not follow this standard when communicating with RealPage and investigating its claim.  [*Id.*].  The United States District Court for the Southern District of Texas has held that where expert testimony, like Mr. Jolstad's, "bears on claims handling and what generally constitutes bad faith within the insurance industry, it is admissible . . . [and] could be helpful to a trier of fact called on to decide [claims] for bad faith and

---

[23] Mr. Jolstad considered additional documents and evidence produced after his report was provided to Defendants. *See* Resp. Decl., Ex. D-10, Dep. Tr. of Mr. Olie Jolstad, at 13:25-15:24 (APP770-72); Ex. D-16, "Documents and Information Considered" (APP842-45).

[24] National Union cites to Mr. Jolstad's testimony to claim that "Jolstad could provide no support for his conclusion that National Union ignored RealPage's alleged control of the funds," but he had already provided the basis for his opinion in his Expert Report, as noted in this brief.  Further, Mr. Jolstad explained his opinion again later in his deposition.  *See* Resp. Decl., Ex. D-10, Dep. Tr. Jolstad at 94:24 -96:18 (APP774-76).

[25] Mr. Jolstad also specifically relies on the *Claims Environment*, a document published by the Insurance Institute of America, to support his opinion that National Union did not follow insurance customs, practices, and standards when it adjusted RealPage's claim. (Jolstad Report at 11 [Dkt. 108 at App. 15]).

violation of the Texas Insurance Code." *Am. Home Assur. Co. v. Cat Tech, L.L.C.*, 717 F. Supp. 2d 672, 682 (S.D. Tex. 2010), *rev'd on other grounds*, 660 F.3d 216 (5th Cir. 2011).

Further, National Union's reliance on *Haymore v. Shelter Gen. Ins. Co.*, 3:19-CV-365-TSL-RHW, 2020 WL 1536571, at *3 (S.D. Miss. Mar. 30, 2020) and *Rubin v. United States Life Ins. Co. in the City of New York*, 15-CV-00384-PAB-NYW, 2016 WL 11165513 (D. Colo. July 1, 2016) is misplaced.  The insured in *Haymore* brought a bad faith claim under Mississippi common law against its insurer in connection with its coverage claim for the alleged theft of its trailer and a tractor-truck covered under a policy issued by its insurer.  The court excluded Mr. Jolstad's testimony because it found that he offered an interpretation of a contract term that was not in dispute and made a legal conclusion regarding a fact that was not in dispute, both of which were "question[s] of law for the court." *Haymore*, 2020 WL 1536571 at *2.  First, Mr. Jolstad does not offer an interpretation of the term "hold for others" in this case; instead, he analyzes the documents in light of insurance industry customs, standards, and practices.  And the *Haymore* court did permit Mr. Jolstad to testify because it found that:

> [G]iven his expertise in the subject area based on his decades of experience in claims adjustment and his resulting knowledge and understanding of industry customs and standards, Mr. Jolstad may properly offer opinions regarding the alleged inappropriateness of [the insurer's] actions in the investigation/adjustment of plaintiff's claims, which may include his opinion as to the respective duties of the insurer and insured in the context of claims adjustment.

*Id.* at *4.  Mr. Jolstad's opinions in this case are no different.  Here, as in *Haymore*, Mr. Jolstad should be permitted to testify regarding insurance industry customs and standards to assist the trier of fact in evaluating whether National Union's handling and investigation of RealPage's claim was reasonable under Chapter 541 of the Texas Insurance Code.  And in *Rubin*, Mr. Jolstad represented the insurer against bad faith claims under Colorado law.  While the court excluded several of Mr. Jolstad's opinions because it found that he did not adequately explain applicable industry standards

or provide an adequate foundation, Mr. Jolstad's opinions in this case are fully developed and explained. *Rubin*, 2016 WL 11165513 at *6. Further, as explained above, Mr. Jolstad articulates the customs, practices, and standards and documents upon which he relies to form his opinions. Finally, the *Rubin* court admitted Mr. Jolstad's testimony on the issues of "whether defendant misrepresented the terms of the policy in the denial letter is admissible" and found that Mr. Jolstad "articulate[d] the basis for this opinion, namely, the absence of any indication in the record that plaintiff made a settlement demand." *Id.* at *6. Mr. Jolstad does the same here, and "Opinion 1" should be permitted.

### B.    Mr. Jolstad Relies on Authoritative Sources, Industry Norms, and His Experience to Support his Opinions.

National Union's additional arguments that "Opinion 1" should be excluded because it is based on "Mr. Jolstad's unsupported speculation about National Union's internal motivations and thought processes" and Mr. Jolstad "provides no meaningful support this conclusion" (Motion [Dkt. 106] at 11) overtly ignores Mr. Jolstad's reference to the emails and documents that he reviewed and considered when formulating his opinion. (Jolstad Report at 7-9 [Dkt. 108 at App. 11-13;]). Mr. Jolstad also explains that National Union engaged in a pattern of conduct that shows it operated under a pretext to find a way to deny coverage by explaining that "National Union repeatedly sought detailed information regarding the highly technical accounting of funds within Stripe's payment software system . . . ." (Jolstad Report at 18 [Dkt. 108 at App. 22]).

Further, National Union's reliance on *Collins v. Safeco Ins. Co. of Indiana*, 3:18-CV-01788-X, 2020 WL 95488, at *3 (N.D. Tex. Jan. 8, 2020) is inapposite because the expert in that case was excluded on the ground that his "expert report [did] not cite to any guidelines, training or certification, or any other authoritative source on the proper methodology for investigating a roof damage claim." (Motion [Dkt. 106] at 16). Here, Mr. Jolstad cites to several authoritative

sources, insurance industry customs, practices and standards, as well as his own forty-two years of experience in the insurance industry.  (Jolstad Report at 5, 11, 15, [Dkt. 108 at App. 9, 15, 19]).  And to the extent that National Union believes the bases for Mr. Jolstad's opinion is still unclear, it is, of course, permitted to subject Mr. Jolstad to "[v]igorous cross-examination." *14.38 Acres*, 80 F.3d at 1078.

### C.    The Court Should Reject National Union's Reliance on Inapposite Caselaw.

Further, National Union argues that Mr. Jolstad "offers nothing more than his own speculation and *ipse dixit* to support his opinions that National Union placed its own interests ahead of RealPage's or that National Union failed to communicate fairly and honestly" (Motion [Dkt. 106] at 16) and says Mr. Jolstad "offer[s] legal standards and then opin[es] that National Union breached them." (Motion [Dkt. 106] at 17).  First, the *Haymore* court rejected a similar challenge to Mr. Jolstad's opinions in favor of the Fifth Circuit Court of Appeals' holding that, "'[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" *Id.* (citing *14.38 Acres*, 80 F.3d at 1077).  Moreover, National Union's reference to legal standards is misleading because it assumes that a legal standard cannot also be incorporated into an insurance industry custom, practice, or standard, which is contrary to National Union's own internal claims handling policies and Endorsement 22 of the Primary Crime Policy.  These internal policies provide, among other things, that National Union claims handlers must follow applicable local laws and regulations, while Endorsement 22 adopts substantially the same language as Texas Insurance Code §§ 542.055, 542.056, and 542.058.[26]  When asked about

---

[26] Sealed Resp. Decl., Ex. E-11, AIG Property & Casualty Claims Handling Policy, § 1, 4.3 (APP781; APP784); Ex. E-12, AIG Property Casualty Claims Handling Guidelines, §§ 4.2, 4.9 (APP791; APP800); Ex. E-13, AIG Claims (U.S.) Claims Handling Standards.

National Union's internal policies, Jodi Bass, the adjuster who handled RealPage's claim, distinguished between "best practices" (i.e., "guidelines that [claims adjusters] should abide by . . . as long as [they] are being reasonable in abiding by them") and "hard and fast rules.[27]  Mr. Jolstad's experience and specialized knowledge of the insurance industry will assist the jury in understanding and distinguishing between "best practices," "hard and fast rules," as well as how a claims adjuster makes a "reasonable decision" when handling an insured's claim.[28]

In addition, it is not at all "clear," as National Union argues, that under "Fifth Circuit law . . . an expert may not testify as to whether an insurer had an arguable . . . basis for denying coverage to support or negate a claim under the Texas Insurance Code." (Motion [Dkt. 106] at 14-15).  In support of this statement, National Union cites to *GuideOne Elite Ins. Co. v. Mount Carmel Ministries*, 676 Fed. Appx. 269, 280 (5th Cir. 2017), which under Mississippi – not Texas – law. And the *GuideOne* court only narrowly addressed a situation where the insured designated its expert witness "to testify on whether [the insurer] had an arguable basis for denial of coverage." *Id.* at 280.  Mr. Jolstad has not been designated for such a purpose, as noted in RealPage's Expert Disclosures. [Dkt. 48 at 2-3].  In a similar vein, National Union says that an insurance expert in *Crow* was excluded because the expert "proffered opinions defining the duty of good faith and fair dealing and conclud[ed] that the carrier breached the duty."  (Motion [Dkt. 106] at 17).  In *Crow*, the expert defined the common law duty of good faith and fair dealing, but, in this case, Mr. Jolstad identifies an industry standard – "to seek and find coverage" (Jolstad Report at 10-11 [Dkt. 108 at

---

[27] Sealed Resp. Decl., Ex. E-14, Bass Dep., 35:17 – 37:9 (APP814-16). These internal policies, guidelines, and standards were in effect during and applied to RealPage's claim. *Id.* at 35:8 – 55:19 (APP814-34).

[28] Sealed Resp. Decl., Ex. E-14, Bass Dep., 35:17 – 37:9 (APP814-16).

14-15]) and opines that National Union did the opposite by "flatly reject[ing] obvious terms and conditions granting coverage." (Jolstad Report at 14 [Dkt. 108 at App. 18]).

National Union "seeks to bar all of Jolstad's testimony," *Essex Ins. Co. v. Structural Shop, Ltd.,* No. 15 C 2806, 2017 WL 2224879, at *2 (N.D. Ill. May 22, 2017), just as the insurer in the *Essex* case did. Interpreting Illinois law, the *Essex* court did not permit Mr. Jolstad to testify "as to the law that governs this case or the legal implications of Essex's conduct." However, he was permitted "to opine that [the insurer], in light of customs, practices, and standards in the insurance industry, failed to promptly and thoroughly investigate the claim or underlying lawsuit" because "[s]uch testimony is helpful to the jury and does not go to legal requirements or the legal ramifications of [the insurer's] conduct." *Id.* at *3. Mr. Jolstad should be granted the opportunity to do the same in this case. Accordingly, the Court should reject National Union's arguments and, as the *Essex* court did, permit Mr. Jolstad "to testify as to general customs, practices, and standards in the insurance industry related to the handling of claims . . . and to opine on [the insurer's] conduct in light of those customs, practices, and standards." *Id.* at *4.

## III.    MR. JOLSTAD'S "OPINION 2" IS BASED UPON APPLICABLE INSURANCE INDUSTRY CUSTOMS, PRACTICES, AND STANDARDS, AND WILL ASSIST THE JURY IN EVALUATING REALPAGE'S BAD FAITH CLAIM.

National Union next attacks "Opinion 2," arguing that Mr. Jolstad "proposes to offer the jury in the present case . . . no meaningful explanation of applicable industry standards based on his experience and no information that will assist the jury in applying any industry standard to the facts of the case." (Motion [Dkt. 106] at 19). National Union further argues that "whether National Union 'demonstrated unreasonable and unconscionable conduct' is a question of fact for the jury for which no expert assistance is needed." (*Id.* at 18). National Union relies on *Sowell v. United States*, CIV.A.3:97-CV-1519-G, 1998 WL 531884, at *2 (N.D. Tex. Aug. 17, 1998), *aff'd sub nom*. *Estate of Sowell v. United States*, 198 F.3d 169 (5th Cir. 1999) to argue that "the ultimate issue of

reasonableness" was correctly excluded. National Union's reliance on *Sowell* is misplaced because (i) it was not an insurance coverage case, (ii) "[a]n opinion is not objectionable just because it embraces an ultimate issue," FED. R. EVID. 704, and (iii) Mr. Jolstad's opinion regarding "reasonableness" is connected to insurance customs, practices, and standards. Further, other courts have found as reliable an expert's opinion that an insurer's investigation was unreasonable where, as here, the expert based his opinion "on sufficient fact and data." *Xcoal Energy & Res. v. New York Marine & Gen. Ins. Co.*, CV H-11-645, 2013 WL 12137321, at *6 (S.D. Tex. Aug. 15, 2013).

"Opinion 2" will help the jury understand how National Union's handling of the claim, and in particular its communications with RealPage, did not comply with the customs, practices, and standards of the insurance industry. National Union again ignores essential portions of Mr. Jolstad's Expert Report in its argument that "Opinion 2" should be excluded, including Mr. Jolstad's explanation of insurance industry customs, practices, and standards and identification of those upon which he relies "in support of [his] opinions." (Jolstad Report at 5-6, 21-22 [Dkt. 108 at App. 9-10; App. 25-26]). Mr. Jolstad's testimony has been upheld when previously challenged by an opposing party on similar grounds:

> Under Iowa law, a plaintiff may prevail on a bad faith claim if he or she can show that "the insurer 'lacked a reasonable basis for denying or delaying payment of the claim.'
>
> Mr. Jolstad's opinions are based on his extensive experience in the insurance industry, and his testimony as to whether Defendants' conduct constituted bad faith—when judged against the customs, practices and standards of the insurance industry—will be helpful to the jury in assessing Penford's bad faith claim.

*Penford Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, *PA*, 662 F.3d 497, 504 (8th Cir. 2011). In addition to *Penford*, Mr. Jolstad's opinion regarding an insurer's bad faith has similarly been upheld in the Northern District of Texas, and the insurers' motion to exclude on the ground that Mr. Jolstad's opinions were improper legal conclusions was denied in its entirety. *See Admiral*

*Ins. Co. v. Petron Energy, Inc.*, Case No. 3:11-CV-02524, Order on Motion to Exclude at 1 (September 3, 2013) (Lynn, J.).

National Union repeatedly characterizes RealPage's bad faith claims as a "mere policy dispute," but Mr. Jolstad's opinion testimony will assist the trier of fact in determining whether it agrees with this characterization because he explains the customs, standards, and practices that National Union should have followed when adjusting RealPage's claim.  As the First Circuit Court of Appeals has noted, "[i]nsurance is a complicated subject and the industry, over time, has developed a patina of custom and usage. Arcana abound. [Insurance] experts could reasonably be expected to shed some light in a shadowy domain."  *Peckham v. Cont'l Cas. Ins. Co.,* 895 F.2d 830, 837 (1st Cir. 1990) (denying  motion to strike opinion testimony of insurance experts on causation as opinion on an ultimate issue).  Accordingly, the Court should reject National Union's motion to exclude "Opinion 2."

## IV.    MR. JOLSTAD'S "OPINION 3" ASSISTS THE JURY BY EXPLAINING THE STANDARD FOR TIMELY INVESTIGATIONS AND CLAIMS HANDLING.

National Union argues that "Opinion 3" is "an impermissible conclusion of fact and law and should be excluded" that "will not assist the jury . . . to determine a fact in dispute because whether National Union took too long to make its determination is governed by the express timetable set forth in Chapter 542, and no specialized knowledge is necessary to assist the jury in applying the statutory timetable to the fact of this case." (Motion [Dkt. 106] at 20).

Texas Insurance Code § 542.058 requires than an insurer pay a claim within 60 days "after receiving all items, statements, and forms **reasonably requested and required**" (emphasis added).  Further, Texas Insurance Code § 542.056 requires an insurer accept or reject an insured's claim within 15 business dates of receiving "all items, statements, and forms **required by the insurer** to secure final proof of loss" (emphasis added).  Additionally, the Primary Crime Policy

includes an endorsement that substantially incorporates these provisions into the Policy itself.[29] While Chapter 542 is treated like a "strict liability provision" by Texas courts, *Agredano v. State Farm Lloyd*s, 975 F.3d 504, 506-507 (5th Cir. 2020), the statute does incorporate the standard of "reasonableness" into its provisions and "whether an insurer acted reasonably is to be judged by the standards of the insurance industry." *Corinth Inv'r Holdings, LLC v. Evanston Ins. Co.*, 4:13-CV-00682, 2014 WL 7146040, at *5 (E.D. Tex. Dec. 15, 2014).

"Opinion 3" appropriately considers whether National Union handled RealPage's claim in a timely manner by identifying the standards that National Union should have followed when investigating and adjusting RealPage's claim and the documents that support the view that National Union did not do so. And Jolstad's "Opinion 3" will assist the jury in evaluating when National Union had received all "items, statements, and forms" under Texas Insurance Code § 542.058 and whether its continued requests for additional information in late 2018 and early 2019 were "reasonably requested." (Motion [Dkt. 106] at 21). Similarly, "Opinion 3" will assist the jury in evaluating when National Union had "received all items, statements, and forms required by the insurer to secure final proof of loss" under Texas Insurance Code § 542.056. National Union ignores Mr. Jolstad's discussion of specific documents and emails provided by RealPage to National Union (Jolstad Report at 20-21 [Dkt. 108 at App. 24-25]), upon which Mr. Jolstad bases his opinion.

In addition to the general requirement that insurance companies must comply with applicable laws, the requirements of the Texas Insurance Code are expressly incorporated into insurance customs, standards, and practices, as well as National Union's own internal policies and

---

[29] Thomas Decl., Ex. A-1 [Dkt. 77], Primary Crime Policy, Endorsement 22 (APP028).

the Primary Crime Policy.[30]  Accordingly, Mr. Jolstad's opinions regarding Chapter 542 will assist the jury in understanding that, in addition to statutory deadlines, National Union was required to handle RealPage's claim reasonably and in a timely manner under insurance industry customs, practices, and standards.  Accordingly, the Court should reject National Union's arguments with respect to "Opinion 3."

## V.    DEFENDANT'S ARGUMENT IS BELIED BY ITS OWN EXPERT OPINIONS.

Although the abundance of case law encouraging expert testimony on insurance industry customs, practices, and standards defeats any notion that Mr. Jolstad's opinions are impermissible legal conclusions, it is noteworthy that National Union's own expert practice in this case is inconsistent with the positions it now takes.  National Union asserts that Mr. Jolstad's opinions are improper legal conclusions because these opinions touch on the undefined policy term "hold for others" in the context of adjusting RealPage's insurance claim and cite relevant industry customs, practices, and standards as they relate to legal standards under Texas law.  But National Union has hired its own expert to opine on "the custom and practice in the insurance industry regarding claims handling in general, and regarding National Union's handling of and payment of a portion of the claim by RealPage that is the subject this lawsuit."  (Designation of Experts by National Union [Dkt. 54] at 2).  National Union cannot have it both ways.  Although the Motion claims otherwise, National Union's expert hiring practice recognizes what the caselaw above states: that the Motion to Exclude Mr. Jolstad's opinions and testimony should be denied.

Accordingly, if the Court ultimately determines that Mr. Jolstad's opinions and testimony will not assist the trier of fact in determining issues under Sections 541 and 542 of the Texas

---

[30]  Sealed Resp. Decl., Ex. E-13, AIG Claims (U.S.) Claims Handling Standards, page 1, Annex A, page 68 (APP804; APP806); Thomas Decl., Ex. A-1 [Dkt. 77], Primary Crime Policy, Endorsement 22 (APP028).

Insurance Code, then the Expert Report of National Union's expert, Diane Parker, "will also be unhelpful to the jury to the extent that [Parker] addresses the issue of bad faith" and should be excluded, *Denison Custom Homes, Inc. v. Zurich Am. Ins. Co.*, CIV.A. V-03-24, 2005 WL 5994166, at *2 (S.D. Tex. Mar. 15, 2005) because Parker testified that her "opinions were formulated as a rebuttal to Mr. Jolstad's opinion."[31]

## <u>CONCLUSION</u>

For all the reasons set forth above, RealPage respectfully requests that the Court deny National Union's Motion to Exclude the Expert Testimony and Strike the Expert Report of Olie Jolstad in its entirety and grant RealPage such other and further relief to which it may show itself justly entitled.

---

[31] Resp. Decl., Ex. D-15, Dep. Parker, 52:22-23 (APP837).

Dated: February 1, 2021

Of Counsel:

Barry J. Fleishman (*admitted pro hac vice*)
Tamara D. Bruno (*admitted pro hac vice*)
Elizabeth J. Dye (Texas Bar No. 24097639)
Pillsbury Winthrop
Shaw Pittman LLP
1200 Seventeenth Street NW
Washington, D.C. 20036-3006
Telephone: (202) 663-9249
barry.fleishman@pillsburylaw.com
tamara.bruno@pillsburylaw.com
elizabeth.dye@pillsburylaw.com

Respectfully submitted,

*/s/ Cortney C. Thomas*
Cortney C. Thomas (Texas Bar No. 24075153)
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Facsimile:  (214) 327-5001
cort@brownfoxlaw.com

*Attorneys for Plaintiff RealPage, Inc.*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.